IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 06–cv–02029–EWN–MEH


TODD A. TREAT,

      Plaintiff,

v.

AMERICAN FURNITURE WAREHOUSE,
CO., a Colorado corporation,

      Defendant.

---

## ORDER AND MEMORANDUM OF DECISION

---

      This is an employment case. Plaintiff Todd A. Treat alleges Defendant American

Furniture Warehouse violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et

seq.*, by interfering with his right to take medical leave and by retaliating against him. This matter

is before the court on "Defendant's Motion for Summary Judgment" and "Plaintiff's Motion for

Summary Judgment: FMLA Interference Claim Under 29 U.S.C. § 2615(a)(1)," both filed June

11, 2007. Jurisdiction is premised upon the existence of a federal question under 28 U.S.C. §

1331

# FACTS

## 1. Factual Background

This matter comes before the court on cross-motions for summary judgement, each of which Defendant briefed with nearly seventy pages of proffered facts. (*See* Def.'s Br. in Supp. of Its Mot. for Summ. J. at 6–70 [filed June 6, 2007] [hereinafter "Def.'s Br."]; Def.'s Resp. to Pl.'s Mot. for Summ. J. at 5–66 [filed July 2, 2007] [hereinafter "Def.'s Resp."].) Despite this avalanche of information, the court finds that the dispositive facts in this case are few in number and largely undisputed.

In 1999, Plaintiff was hired by Defendant as a "puller" in its Thornton, Colorado, facility. (Def.'s Br., Facts [hereinafter "SOF"] ¶ A1; *deemed admitted at* Pl.'s Reply Br. on His Mot. for Summ. J.: FMLA Interference Claim Under 29 U.S.C. § 2615(a)(1) [hereinafter "Pl.'s Reply"], Response Concerning Def.'s Statement of Additional [sic] Facts [hereinafter "RSAF"] ¶ A1 [filed July 17, 2007].)[1] Between the late spring and early summer of 2004, Plaintiff took approximately ten weeks of FMLA leave from Defendant, purportedly for mental health reasons

---

[1] Plaintiff never directly answers Defendant's proffered facts, instead cross-referencing his answer to *identical* facts — albeit sometimes differently numbered — in Defendant's response to Plaintiff's *own* motion for summary judgment. (*See* Pl.'s Resp. at 2 [cross-referencing Pl.'s Reply].) Even in his reply, however, Plaintiff ignores this court's practice standards, cherry-picking specific facts with which to take issue, ignoring other facts, and dismissing whole sections of facts by calling them "immaterial" or "inadmissible" without any explanation. (*See* Pl.'s Reply at 4–6; *see also* Practice Standards — Civil: Special Instructions Concerning Motions for Summary Judgment.) Accordingly, I deem as admitted any fact that is either ignored in Plaintiff's reply or dismissed as "immaterial" or "inadmissible" without sufficient explanation.

relating to an ongoing criminal proceeding and a divorce. (*Id.*, SOF ¶¶ H26–H44, H52–H54, H56–H58; *admitted at* Pl.'s Reply, RSAF ¶¶ G26–G44, G52–G54, G56–G58.) Plaintiff had sought and received a medical note requesting such leave after speaking to Defendant's Human Resource Director, who had told him that going to jail was not a valid reason for FMLA leave. (*Id.*, SOF ¶¶ H32–H33, H35–H37; *admitted at* Pl.'s Reply, RSAF ¶¶ G32–G33, G35–G37.) During his time off, Plaintiff finalized the divorce with his wife, and appeared in court for appointment of counsel in his criminal case. (*Id.*, SOF ¶¶ H46, H50; *deemed admitted at* Pl.'s Reply, RSAF ¶¶ G46, G50.) Nonetheless, by the time Plaintiff returned to work on June 28, 2004, his criminal case remained unresolved, and he eventually pled guilty on October 8, 2004. (*See id.*, SOF ¶ H58, H80; *deemed admitted at* Pl.'s Reply, RSAF ¶ G58, G80.) On the day he pled guilty, the court set a sentencing hearing for January 21, 2005. (*Id.*, SOF ¶ H86; *deemed admitted at* Pl.'s Reply, RSAF ¶ G86.)

Between January 5, 2005, and January 23, 2005, Plaintiff worked approximately 120 hours. (*Id.*, SOF ¶ I1; *deemed admitted at* Pl.'s Reply, RSAF ¶ H1.) On January 21, 2005, Plaintiff appeared for his sentencing hearing. (*Id.*, SOF ¶ I8; *deemed admitted at* Pl.'s Reply, RSAF ¶ H8.) The hearing was continued until February 10, 2005. (*Id.*, SOF ¶ I20; *deemed admitted at* Pl.'s Reply, RSAF ¶ H20.) On January 24, 2005, Plaintiff met with Victor Palomares, a physician's assistant, who provided him with a medical note reading, "Please give short term disability to [Plaintiff] until May 1, 2005." (*Id.*, SOF ¶¶ I24, I44; *deemed admitted at* Pl.'s Reply, RSAF ¶¶ H24, H44.) Plaintiff testified in a later deposition that he needed short-term disability leave because of uncertainty regarding what would happen in his ongoing criminal case. (*Id.*,

SOF ¶ I154; *deemed admitted at* Pl.'s Reply, RSAF ¶ H154.)  Plaintiff further stated that he never told Mr. Palomares that he felt unable to work during their January 24, 2005, meeting, and that the idea of taking leave had initiated from Mr. Palomares.  (*Id.*, SOF ¶ I153; *deemed admitted at* Pl.'s Reply; RSAF ¶ H153.)

Plaintiff was not scheduled to work on January 24, 2005, or January 25, 2005, but was scheduled to work from January 26, 2005, through January 28, 2005.  (*Id.*, SOF ¶ I90–I91; *deemed admitted at* Pl.'s Reply, RSAF ¶ H90–H91.)  Defendant's leave notification policy required employees to notify supervisors on days they would be unable to work, and stated that employees who were absent from work for three consecutive days without authorization would be deemed to have abandoned their positions and would be terminated.  (*See* Def.'s Br., SOF ¶¶ I76–I77; *deemed admitted at* Pl.'s Reply, RSAF ¶¶ H76–H77.)  Plaintiff did not call in or show up for work on January 26, 2005, January 27, 2005, or January 28, 2005, and was terminated on January 28, 2005.  (*Id.*, SOF ¶¶ I93, I105; *deemed admitted at* Pl.'s Reply, ¶¶ H93, H105.)  The supervisor who terminated Plaintiff made the decision "because he thought, after checking payroll records and with the staff that was around . . . that [Plaintiff] had been no-call no-show for three days . . . without having prior approval."  (*Id.*, SOF ¶ I106; *deemed admitted at* Pl.'s Reply, ¶ H106.)

Sometime between January 24, 2005, and January 29, 2005, Plaintiff delivered Mr. Palomares's note to Defendant.  Plaintiff testified that he delivered this note during the evening of January 24, 2005.  (*See* Pl.'s Mot. for Summ. J.: FMLA Interference Claim Under 29 U.S.C. § 2615(a)(1) [hereinafter "Pl.'s Br."], Statement of Facts [hereinafter "SOF"] ¶ 7 [filed June 11,

2007]; *admitted at* Def.'s Resp., Response to Statement of Facts [hereinafter "RSOF"] ¶ 7.)

Plaintiff also, however, testified that the date of his delivery: (1) "could have been" January 25,

2005; (2) "was within a couple days" of his medical appointment; and (3) "had to be within that

day or two of when I went to the doctor." (*See* Def.'s Br., Ex. A–2 Part 8 at 2 [Treat Dep.]; *id.*,

Ex. A–2 Part 7 at 18 [Treat Dep.])

Defendant, by contrast, offers thirty-five undisputed facts suggesting that Plaintiff

delivered his note on January 29, 2005. (*See id.*, SOF ¶¶ I108–II39, I141–I143, I145; *deemed*

*admitted at* Pl.'s Reply, RSAF ¶¶ H108–II39, H141–I143, H145.) Specifically, Defendant offers

undisputed evidence that: (1) the note was delivered on a day when Plaintiff's manager, Steve

Franklin, either was not working or was not present; (2) the note was delivered on a day when

four other employees — Todd Heller, Joel Rael, Tommy Thompson, and Bob Scott — all *were*

working; (3) the only day during the work week commencing January 24, 2005, when Messrs.

Heller, Rael, Thompson, and Scott all were working was January 29, 2005; (4) Mr. Franklin was

*not* working January 29, 2005; (6) Mr. Heller, the individual to whom the note was delivered,

recalled that it had been delivered on January 29, 2005; (7) Mr. Heller recalled the note had been

approximately one week after he had last worked with Plaintiff; and (8) Mr. Heller had last

worked with Plaintiff on January 22, 2005. (*See id.*)

Plaintiff's termination form, completed by Plaintiff's supervisor on January 28, 2005,

remained on Plaintiff's supervisor's desk until the morning of January 31, 2005. (Pl.'s Br., SOF

¶¶ 18–19; *admitted at* Def.'s Resp., RSOF ¶ 18–19.) On January 31, 2005, this form was

delivered to Defendant's corporate offices and keyed into Defendant's payroll system. (*Id.*, SOF

¶¶ 19–20; *admitted at* Def.'s Resp., RSOF ¶ 19–20.)  On February 10, 2005, Plaintiff was

sentenced to sixty days in jail.  (Def.'s Br., SOF ¶ I202; *deemed admitted at* Pl.'s Reply, RSAF ¶

H202.)  He was subsequently incarcerated from March 4, 2005, to April 5, 2005.  (Def.'s Br.,

SOF ¶ I207; *deemed admitted at* Pl.'s Reply, RSAF ¶ H207.)

## 2.    *Procedural History*

On October 11, 2006, Plaintiff filed a complaint in this court, alleging interference with his

right to take medical leave and retaliation under the FMLA, and discrimination and retaliation

under the Americans with Disabilities Act ("ADA").  (*See* Compl. and Demand for Jury Trial

[filed Oct. 11, 2006].)  On June 11, 2006, Defendant filed a motion for summary judgment,

arguing that Plaintiff could not establish the essential elements of — or overcome the applicable

defenses to — any of his FMLA or ADA claims.  (*See* Def.'s Br.)  That same day, Plaintiff filed a

motion for summary judgment on his FMLA interference claim only, asserting he was entitled to

judgment on this claim as a matter of law.  (*See* Pl.'s Br.)

On July 2, 2007, Defendant filed a response to Plaintiff's motion.  (*See* Def.'s Resp.)  On

July 17, 2007, Plaintiff filed a reply.  (*See* Pl.'s Reply.)  On August 5, 2005, Plaintiff filed a

response to Defendant's motion, responding only to those arguments pertaining to his FMLA

claims.  (*See* Pl.'s Resp. to Mot. for Summ. J. [filed Aug. 5, 2007] [hereinafter "Pl.'s Resp."].)

On August 6, 2005, I granted Plaintiff's motion to voluntarily dismiss his ADA claims.  (*See*

Order of Dismissal of ADA Claims with Prejudice [filed Aug. 6, 2007].)  On December 11, 2007,

Defendant filed a reply.  (*See* Def.'s Reply Br. in Supp. of its Mot. for Summ. J. [filed Dec. 11,

2007] [hereinafter "Def.'s Reply"].)  This matter is fully briefed and ripe for review.

# ANALYSIS

### 1.    *Legal Standard*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2008); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e)(2) (2008). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most

favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

## 2.    *Evaluation of Claims*

Defendant argues it is entitled to summary judgment on Plaintiff's FMLA interference and retaliation claims. (*See* Def.'s Br. at 71–88.) Plaintiff disputes this assertion, and separately argues that he is entitled to summary judgment on his FMLA interference claim only. (*See* Pl.'s Resp. at 4–14; Pl.'s Br. at 6–11.) I assess each party's arguments with respect to each FMLA claim separately.

### a.    *Interference Claim*

The FMLA guarantees up to twelve weeks of unpaid leave for eligible employees of covered employers for serious health conditions and reinstatment to the former position or an equivalent upon return from leave. *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006) (citing 29 U.S.C. §§ 2612[a][1], 2614[a]). The FMLA makes it unlawful for any covered employer to interfere with, restrain, or deny the exercise of or attempt to exercise, any right provided in the act. *See Jones v. Denver Pub. Sch.*, 427 F.3d 1315, 1318–19 (10th Cir. 2005) (quoting 29 U.S.C. § 2615[a][1]).

To establish the *prima facie* case of an FMLA interference claim, a plaintiff must show that: (1) he was entitled to FMLA leave; (2) some adverse action by the employer interfered with his right to take such leave; and (3) the employer's action was related to the exercise or attempted exercise of his right. *Id.*, 427 F.3d at 1318–19 (citation omitted). A denial, interference, or restraint of FMLA rights is a violation regardless of an employer's intent, and the *McDonnell*

*Douglas* burden-shifting analysis does not apply to interference claims. *Metzler*, 464 F.3d at 1180 (citations omitted). Nonetheless, the FMLA is not a strict liability statute, and "an employee may be dismissed, preventing her from exercising her statutory right to FMLA leave . . . if the dismissal would have occurred regardless of the employee's request for . . . leave." *Id.* (citation omitted). "[T]he employer bears the burden of proof on the third element of an interference claim once the plaintiff has shown her FMLA leave was interfered with." *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th. Cir. 2007).

In the instant case, Defendant contends that Plaintiff cannot establish the first element of his *prima facie* case and, in any event, would have been terminated irrespective of his FMLA request. (Def.'s Br. at 71–82.) For the reasons set forth below, I agree with Defendant on both counts.

### i. *Plaintiff's Entitlement to Leave*

As relevant to the instant case, an employee is entitled to leave under the FMLA "because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D) (2006). As relevant to Plaintiff, a "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." *Id.* § 2611(11). Defendant argues that Plaintiff cannot establish that he was either: (1) unable to perform the functions of his position; or (2) had "a serious health condition involving continuing treatment by a health care provider" as that term is defined under applicable regulations. (Def.'s Br. at 72–76.) Plaintiff, by contrast, ignores Defendant's first argument, and offers an inapposite rejoinder to its

second.  (*See* Pl.'s Resp. at 5; Pl.'s Reply at 10–13.)[2]  I discuss each of Defendant's arguments in turn.

A. PLAINTIFF'S INABILITY TO PERFORM THE FUNCTIONS OF HIS POSITION — Defendant first argues that Plaintiff cannot establish that he was unable to perform the functions of his position, because, *inter alia*, he had been performing his job up until the last day he worked — January 23, 2005 — and has presented no evidence suggesting he became unable to work between this date and the date he dropped off his note requesting FMLA leave, which occurred sometime between January 24, 2005, and January 29, 2005.  (*See* Def.'s Br. at 72; Def.'s Reply at 5.)  Specifically, Defendant has proffered undisputed evidence that: (1) Plaintiff worked approximately 120 hours in the eighteen days preceding his January 24, 2005, appointment with Mr. Palomares; (2) Plaintiff never told Mr. Palomares that he felt unable to work during his appointment; and (3) the idea of taking leave initiated from Mr. Palomares.  (Def.'s Br., SOF ¶¶ H1, H153, H158; *deemed admitted at* Pl.'s Reply; RSAF ¶¶ I1, I153, I158).  Because Plaintiff has not only failed to cite any evidence demonstrating a genuine issue of material fact as to whether he was able to perform the functions of his position at the time he delivered his medical

---

[2]Because the parities' cross-motions for summary judgment cover much of the same territory, Plaintiff merely cross-references arguments from his *reply* to Defendant's *response* to Plaintiff's *own* motion for summary judgment in responding to *Defendant's* motion for summary judgment.  (*See* Pl.'s Resp. at 5 [cross-referencing Pl.'s Reply].)  Defendant correctly notes that it is not this court's responsibility to hunt through Plaintiff's cryptic cross-references to other arguments in other filings to identify his arguments, but the court nonetheless observes that the greatest disservice of this shoddy briefing is done to Plaintiff himself, who is prevented from engaging — much less refuting — dispositive arguments in Defendant's motion.  (*See* Def.'s Reply at 6.)

note, but has failed to even *engage* Defendant's argument, I find that he has failed to meet his

burden of demonstrating a genuine dispute of material fact necessitating trial. *See Concrete*

*Works*, 36 F.3d at 1518 (nonmoving party bears burden to demonstrate a genuine issue for trial on

a material matter). Accordingly, I find that Plaintiff cannot establish the first element of his *prima*

*facie* case, and that summary judgement must issue for Defendant for this reason alone.

B. SERIOUS HEALTH CONDITION INVOLVING CONTINUING TREATMENT BY A HEALTH

CARE PROVIDER — In the alternative, I find that Defendant has likewise proven that Plaintiff

cannot establish that he had a "serious health condition involving continuing treatment by a health

care provider" as that term is defined under applicable regulations. (*See* Def.'s Br. at 72–77;

Def.'s Reply at 7–9.) Specifically, Defendant has analyzed all the potential methods by which

Plaintiff could have proven that he had such a serious health condition, and has persuasively

demonstrated an absence of evidence to suggest a triable issue of fact as to essential elements of

each one of them.[3] (*See* Def.'s Br. at 72–76 [discussing every method of proof available under 29

C.F.R. § 825.114(a)(2)(i)–(v)].) Plaintiff, by contrast, offers the nearly incomprehensible

rejoinder that, had Defendant contacted Mr. Palomares for more information about Plaintiff's

alleged condition prior to terminating him, Mr. Palomares might well have provided the type of

evidence that Plaintiff now needs, which Plaintiff could then presumably have discovered through

---

[3]For instance, Defendant has even dutifully argued that Plaintiff cannot prove he experienced "a period of incapacity due to pregnancy or prenatal care" because he has not proffered sufficient evidence to suggest that he was pregnant. (*See* Def.'s Br. at 75 [citing method of proof under 29 C.F.R. § 825.114(a)(2)(ii)].)

litigation to make his case.[4]  (*See* Pl.'s Reply at 10–12.)  Such speculation is not evidence, and

does not satisfy Plaintiff's burden.  *See Celotex*, 477 U.S. at 324 (requiring nonmovant to

designate specific *facts* demonstrating a genuine issue for trial).  Moreover, even charitably read,

Plaintiff's argument is that Defendant's *perception* of Plaintiff's alleged medical condition might

have been different had Defendant sought and received more information from Mr. Palomares,

but, even so, Plaintiff fails to demonstrate how Defendant's *perception* of his condition is at all

relevant to assessment of this condition.  (*See* Pl.'s Reply at 10–12.)

 Finally, I note that Plaintiff's one arguable attempt to demonstrate that he had a serious

medical condition as defined under the regulations fails because it ignores essential elements of

such proof.  Although he does not explicitly so argue, Plaintiff *implies* that Mr. Palomares's

intention to start him on an antidepressant and sleep aid regimen, along with Plaintiff's follow-up

visit to Mr. Palomares on February 2, 2005, might have constituted treatment by a health care

provider "followed by a regimen of continuing treatment."  (*See id.*)  Nonetheless, as Defendant

correctly points out, such a visit followed by a regimen of continuing treatment could only

---

 [4]This argument is so Orwellian that the court had difficulty grasping it, let alone
articulating all its flaws.  As best this court can fathom, Plaintiff relies on this bizarre argument
because the only evidence even *suggesting* he had any relevant medical condition at the time of his
termination was Mr. Palomares's own clinical notes from Plaintiff's visit, and Mr. Palomares
subsequently stated in a deposition that he would have "discharged [Plaintiff] from the office
immediately" had he known all the circumstances potentially incentivizing him to misrepresent his
medical condition because he did not "like to be snowed over by [his] patients."  (*See* Def.'s Br.,
Ex. A–51 Part 2 at 8. [Palomares Dep.].)  Thus, considering the likely difficulty Plaintiff might
have faced in collecting *ex post* evidence of his purportedly serious medical condition from Mr.
Palomares, the court can at least understand the byzantine appeal of Plaintiff's convoluted,
backward-looking argument, while still finding it wholly unconvincing.

arguably be relevant under 29 C.F.R. § 825.114(a)(2)(i)(B), which *additionally* requires Plaintiff

to demonstrate three consecutive calendar days of incapacity.  *See* 29 C.F.R. § 825.114(a)(2)(i)

(2008); (*see also* Def.'s Reply at 8–9.)  Because Plaintiff has failed to provide any evidence

suggesting that he was incapacitated for three consecutive days, and has moreover failed to even

document the purported evidence of Mr. Palomares's intention to start him on a continuing

treatment regimen in the fact sections of his briefs, I find that this arguable attempt to show that

he had a serious health care condition as defined under the regulations fails to satisfy Plaintiff's

burden.  (*See* Pl.'s Br; Pl.'s Resp.; Pl.'s Reply.)  Accordingly, I additionally find that Plaintiff

cannot establish the first element of his *prima facie* case because he cannot show that he had a

serious medical condition.

### ii.        *Plaintiff's Termination Irrespective of His FMLA Request*

Finally, even assuming Plaintiff had proffered sufficient evidence to suggest a triable issue

of fact regarding his entitlement to FMLA leave, I find that Defendant would *still* have been

entitled to summary judgement because it has proven a lack of causal connection between

Plaintiff's termination and his FMLA request.

Employers are permitted under the FMLA to enforce their own leave notification policies.

*See* 29 C.F.R. § 825.302(d) (2008) ("An employer may also require an employee to comply with

the employer's usual and customary notice and procedural requirements for requesting leave.").

The Tenth Circuit has affirmed summary judgment for employers who have terminated employees

for failure to comply with their usual leave notification procedures, regardless of any

contemporaneous FMLA requests.  *See, e.g.*, *Bones v. Honeywell Intern, Inc.*, 366 F.3d 869, 878

(10th Cir. 2004) ("Bones' request for an FMLA leave does not shelter her from the obligation, which is the same of any other Honeywell employee, to comply with Honeywell's employment policies, including its absence policy."); *see also Taylor v. Smith's Food and Drug Ctrs., Inc.*, 127 F. App'x 394, 397 (10th Cir. 2005). Moreover, the Tenth Circuit holds that an employer's good faith belief that an employee has abandoned his job will defeat an FMLA interference claim, even if this belief turns out to be mistaken. *See Medley v. Polk Co.*, 260 F.3d 1202, 1207–08 (10th Cir. 2001).

In the instant case, I find that there is no genuine dispute as to whether Plaintiff was terminated for any reason *other* than his non-compliance with Defendant's leave notification policy. Specifically, Defendant has proffered undisputed evidence that this policy required employees to notify supervisors on days they would be unable to work, and that an employee who was absent from work for three consecutive days without authorization would be deemed to have abandoned his position and be terminated. (*See* Def.'s Br., SOF ¶¶ I76–I77; *deemed admitted at* Pl.'s Reply, RSAF H76–H77.) Moreover, Defendant has proffered undisputed evidence that: (1) Plaintiff was scheduled to work from January 26, 2005, through January 28, 2005; (2) he did not call in or show up for work those days; and (3) Plaintiff's supervisor terminated Plaintiff on January 28, 2005, because he *believed* that Plaintiff had been absent from work for three consecutive days without authorization. (*See id.*, SOF ¶¶ I91, I93, I105–I106; *deemed admitted at* Pl.'s Reply, ¶¶ H91, H93, H105–H106.)

By contrast, Plaintiff does not even argue in his briefing that Defendant received his FMLA request *prior* to terminating him. (*See* Pl.'s Resp. at 7–9.) Nonetheless, because Plaintiff

so testified in his deposition, I proceed out of fairness to demonstrate the lack of a genuine dispute as to whether Plaintiff delivered his medical note on any day *other* than January 29, 2005, which was one day *after* his termination.

Defendant's undisputed evidence shows that: (1) Plaintiff's medical note was delivered on a day when Mr. Franklin either was not working or was not present; (2) the note was delivered when four other employees — Messrs. Heller, Rael, Thompson, and Scott — all *were* working; (3) the only day during the work week commencing January 24, 2005, when Messrs. Heller, Rael, Thompson, and Scott were all working was January 29, 2005; (4) Mr. Franklin was *not* working that day; (5) Mr. Heller recalled that the note had been delivered on January 29, 2005; (6) Mr. Heller testified that the note had been delivered approximately one week after he had last worked with Plaintiff; and (7) Mr. Heller had last worked with Plaintiff on January 22, 2005. (*See* Def.'s Br., SOF ¶¶ I108–II39, I141–I143, I145; *deemed admitted at* Pl.'s Reply, RSAF ¶¶ H108–II39, H141–I143, H145.) By contrast, Plaintiff's deposition statement that he delivered the note on the evening January 24, 2005, is undercut by even his own shifting statements on this point. (*See* Pl.'s Br., SOF ¶ 7; *admitted at* Def.'s Resp., RSOF ¶ 7; *see also* Def.'s Br., Ex. A–2 Part 8 at 2 [Treat Dep.]; *id.*, Ex. A–2 Part 7 at 18 [Treat Dep.]) In the face of such overwhelming evidence, I find that no reasonable jury could find that the medical note was delivered on any date *other* than January 29, 2005, and that there is thus no genuine dispute as to this date.

Thus, because Defendant has proffered undisputed evidence regarding its motivation for terminating Plaintiff, and because Plaintiff has *failed* to offer any evidence suggesting the existence of a causal connection between his FMLA request and his termination, I find that

Defendant has carried its burden of demonstrating an absence of disputed material fact as to

whether Plaintiff was terminated for any reason *other* than noncompliance with Defendant's leave

notification policy. *See Bones*, 366 F.3d at 878. Alternatively, I find that Defendant has carried

its burden of demonstrating the absence of disputed material fact as to whether or not it *believed*

it was terminating Plaintiff for his failure to adhere to its policies, which is alone sufficient to

defeat Plaintiff's claim. *See Medley*, 260 F.3d at 1207–08.

While making no attempt to address this evidentiary void, Plaintiff nonetheless tries to

create a question of fact by redefining the term, "termination," to mean Defendant's *failure* to halt

the termination process, and the term, "reason," to mean Defendant's unarticulated rationale for

not taking such action. (*See* Pl.'s Resp. 7–9.) Plaintiff obliquely reasons that, because his

termination did not become effective until processed through Defendant's payroll system the

*Monday* following his *Friday* termination, and because Defendant had received his medical note

by that intervening *Saturday*, Defendant could have halted the processing of his termination upon

discovering that his note arguably requested leave effective that *preceeding* Monday, January 24,

2005.[5] (*See* Pl.'s Reply 7–9.) Thus, Plaintiff contends, Defendant's action in interference with

the attempted exercise of his FMLA rights was not his Friday termination, but rather Defendant's

failure to halt the processing of this termination upon receipt of his arguable request for

_____

[5]The medical note itself requests no specific beginning date for Plaintiff's medical leave,
instead reciting: "Please give short term disability to [Plaintiff] until May 1, 2005." (See Def.'s
Br., Ex. A–52 at 2 [Medical Note].) Plaintiff's contention that this note arguably requests
medical leave effective January 24, 2005, therefore, apparently derives from the note's date,
which was January 24, 2005. (*See id.*)

retroactive medical leave extending to the three days he had failed to call in or show up for work. (*See id.*)  Squaring the circle, Plaintiff asserts that there is a triable issue of fact as to whether Defendant's failure to halt the paperwork following his Friday termination was actually related to Plaintiff's intervening request for *retroactive* medical leave.  (*See id.*)

While mere recitation of this argument is nearly sufficient to refute it, I find that it fails as a matter of law because it seeks to prevent through obfuscation and looking-glass logic what the FMLA regulations expressly permit — namely, Defendant's right to enforce its leave notification procedures.  *See* 29 C.F.R. § 825.302(d) (2008) (permitting employers to enforce their policies). As clearly demonstrated by the facts of this case, acceptance of Plaintiff's argument would effectively foreclose Defendant from terminating employees for noncompliance with its policies. Moreover, if Plaintiff's argument were accepted, the only thing a terminated employee would need to do create a triable issue of fact on an FMLA interference claim would be to deposit a medical note into the corporate files before his termination became effective, whether or not this termination was completely justified.  Because Plaintiff has provided no legal support for his novel interference theory, and because I find it contravenes regulations and case law permitting employers to enforce their leave notification procedures, I find this argument fails as a matter of law.

Thus, because I have found that Plaintiff cannot establish either the first or third elements of his *prima facie* case, I find Defendant is entitled to summary judgement on Plaintiff's FMLA interference claim.

### b. Retaliation Claim

To state a *prima facie* case of retaliation under the FMLA, Plaintiff must show that: (1) he engaged in a protected activity; (2) Defendant took an action that a reasonable employee would have found materially adverse; and (3) a causal connection exists between the protected activity and the adverse action. *Metzler*, 464 F.3d at 1171. Once Plaintiff establishes a *prima facie* case, Defendant must offer a valid, non-retaliatory reason for the employment action. *Id*. at 1170. Plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual. *Id*.

In the instant case, Defendant argues Plaintiff cannot establish a *prima facie* case of retaliation because he cannot establish either the first or third elements, and, in any event, cannot prove that Defendant's reason for terminating him was pretextual. (*See* Def.'s Br. at 82–88.) For the reasons set forth below, I agree with Defendant on the first two counts, and decline to consider the third.

### i. Plaintiff's Engagement in a Protected Activity

Tenth Circuit law remains unsettled as to whether an employee must actually have been entitled to FMLA leave to maintain his FMLA retaliation suit. *See Wilkins v. Packerware Corp.*, No. 06–3400, 2008 WL 63482, at *3 (10th Cir. Jan. 7, 2008) (calling the issue "very much an open question in this circuit"). Nonetheless, the Tenth Circuit reads its own precedent to "prefigure the conclusion that the lawful taking of FMLA leave is a prerequisite to a retaliation claim." *Id*. at *4. At a minimum, the Tenth Circuit holds in analogous ADA cases that the first element of a retaliation claim requires the employee to have "a reasonable, good faith belief that

the statute has been violated." *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001).

In the instant case, I find that Plaintiff cannot prove the first element of his *prima facie* case because, as demonstrated above, he was not entitled to FMLA leave. *See Wilkins*, 2008 WL 63482, at *3. In the alternative, I find there is no genuine issue of material fact as to whether Plaintiff had a reasonable, good faith belief that denial of his request would violate the FMLA. Defendant has cited undisputed evidence that: (1) Plaintiff *himself* admitted he needed FMLA leave because of uncertainty regarding what would happen with his ongoing criminal case; and (2) Defendant's HR Director had told Plaintiff in 2004 that going to jail was not a valid reason for FMLA leave. (*See* Def.'s Br., SOF ¶¶ H33, I154; *deemed admitted at* Pl.'s Reply, RSAF ¶¶ G33, H154.) Plaintiff does not directly engage this evidence, but nonetheless inappositely maintains that he engaged in a protected activity because he was arguably still an employee at the time he delivered his medical note to Defendant. (*See* Pl.'s Resp. at 10.) Because this argument is non-responsive on the critical question of whether Plaintiff *believed* he was entitled to FMLA leave — much less whether this belief was *reasonable* in light of the fact that Defendant's HR Director had told Plaintiff that going to jail was not a valid reason for FMLA leave — I find that Plaintiff has failed to meet his burden of designating specific facts for trial on these points. *See Celotex*, 477 U.S. at 324; *see also Wilkins*, 2008 WL 63482 at *3 (stating that "[a]n employee thus cannot claim protection under the Act merely by asserting that he or she wishes to take FMLA leave, and then, say, be free to vacation in Hawaii"). Accordingly, I find that Plaintiff cannot establish the

first element of his *prima facie* case of retaliation, and that summary judgment must issue for Defendant for this reason alone.

### ii.    *Causal Connection Between FMLA Request and Termination*

In the alternative, I find that Plaintiff cannot establish the third element of his *prima facie* case because it is axiomatic that an allegedly retaliatory action must *follow* the allegedly protected act. *See, e.g.*, *Universal Mfg. Co. v. Gardner, Carton & Douglas*, 207 F. Supp. 2d. 803, 834 (N.D. Ill. 2002) ("The effect of something cannot precede its cause").

As demonstrated above, there is no genuine dispute as to whether Plaintiff delivered his medical note to Defendant on any day *other* than January 29, 2005, which was one day *after* his termination. Accordingly, I find that Plaintiff cannot establish a causal connection between the delivery of this note and his termination. *See Universal Mfg. Co.*, 207 F. Supp. 2d. at 834.

In counseling against the above conclusion, Plaintiff effectively concedes the January 29, 2005, delivery date, but redolently contests that, because his termination was not processed until January 31, 2005, a retaliatory intent to punish him for his FMLA request could have supplanted Defendant's original rationale for terminating him after he delivered the note, and that a causal connection may therefore exist between his January 29, 2005, request, and Defendant's failure to halt the termination process. (*See* Pl.'s Resp. at 10.) Because Plaintiff has provided no support for his implicit suggestion that temporal proximity between the delivery of an untimely FMLA request and an employer's subsequent *failure* to halt an ongoing termination process may give rise to an inference of causal connection, however, I find this argument is pure speculation and therefore insufficient to carry Plaintiff's burden of demonstrating specific *facts* demonstrating the

-20-

need for trial.  *See Celotex*, 477 U.S. at 324.  Accordingly, I find that summary judgement must issue for Defendant for this reason as well.

Thus, because Plaintiff cannot establish either the first or third elements of his *prima facie* case, I find that Defendant is entitled to summary judgment on his FMLA retaliation claim.

**3.**     **Conclusion**

Based on the foregoing it is therefore ORDERED that:

1.     DEFENDANT's motion (#32) is GRANTED.

2.     PLAINTIFF's motion (#36) is DENIED.

The clerk shall forthwith enter judgment in favor of Defendant and against Plaintiff, dismissing Plaintiff's claims with prejudice.  Defendants may have their costs by filing a bill of costs within eleven days of the date of this order.

Dated this 21st day of February, 2008.

BY THE COURT:


s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
Chief United States District Judge